**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
BENTON DIVISION**

| | |
|---|---|
| **U.S. Equal Employment Opportunity Commission,** *Plaintiff,* *and* **Jasper Futch** *[Proposed] Intervenor-Plaintiff* *and* **John Doe** *[Proposed] Intervenor-Plaintiff* v. **Starboard With Cheese, LLC., et al.,** *Defendants,* | Case No. 3:24-cv-02260-NJR Judge Nancy J. Rosenstengel |

**CHARGING PARTY JASPER FUTCH AND AGGRIEVED INDIVIDUAL
JOHN DOE'S OPPOSITION TO THE
U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION'S
<u>MOTION TO DISMISS</u>**

The Equal Employment Opportunity Commission ("EEOC") filed this suit to challenge violations of Title VII of the Civil Rights Act of 1964 and to protect the rights of low-wage workers harmed by the employers' lawlessness. The EEOC now asks the Court to take extraordinary, politically motivated action that violates the law Congress charged the Agency with enforcing, flies in the face of Supreme Court precedent, and contravenes Federal Rule of Civil Procedure 41(a)(2). The Court should decline.

**PROCEDURAL HISTORY**

The EEOC initiated this action on October 1, 2025, "to correct unlawful employment practices on the basis of sex, gender identity and retaliation and to provide appropriate relief to the Aggrieved Individuals, including the Charging Party who filed Charge No. 440-2021-03623 and two other employees ("the Aggrieved Individuals")." ECF No. 1 at #1. The Charging Party and two Aggrieved Individuals are employees who endured unlawful discrimination, harassment, and retaliation while working at Starboard with Cheese, LLC in Carbondale, Illinois, a franchise of the national Wendy's fast-food restaurant. They had been collaborating with the EEOC for years, providing information to the EEOC as it was conducting its investigation. The filing of the complaint was a meaningful step on their journey to justice.

After the complaint, the case proceeded as litigation typically does. The EEOC served Defendant Starboard with Cheese, LLC with a summons, and the clock began for defendant to respond. But then, business as usual went sideways. On January 20, 2025, President Trump issued an Executive Order titled "Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government." Exec. Order 14168, 90 Fed. Reg. 8615 (Jan. 20, 2025) ("the Order").

The Office of Personnel Management followed the Order with a guidance directing federal agencies to "end agency programs that use taxpayer money to promote or reflect gender ideology" as defined by the Order. "Initial Guidance Regarding President Trump's Executive Order Defending Women." Memorandum from Charles Ezell, Acting Dir., OPM to the Heads & Acting Heads of Dept's &

Agencies (Jan. 29, 2025), https://www.opm.gov/media/yvlh1r3i/opm-memo-initial-guidance-regarding-trump-executive-order-defending-women-1-29-2025-final.pdf. ("OPM Guidance"). Section 2(f) of the Order defined "gender ideology" as follows:

> "Gender ideology" replaces the biological category of sex with an ever-shifting concept of self-assessed gender identity, permitting the false claim that males can identify as and thus become women and vice versa, and requiring all institutions of society to regard this false claim as true. Gender ideology includes the idea that there is a vast spectrum of genders that are disconnected from one's sex. Gender ideology is internally inconsistent, in that it diminishes sex as an identifiable or useful category but nevertheless maintains that it is possible for a person to be born in the wrong sexed body.

*Id.* The OPM Guidance enumerates a list of actions agencies must take to end programs that "promote or reflect" so-called "gender ideology" in the federal government. The list includes terminating grants that "promote or inculcate gender ideology", changing job descriptions, taking down outward facing media, reviewing agency email systems, withdrawing regulations, cancelling trainings, disbanding federal employee resource groups, reviewing agency forms and policies, and ensuring that "intimate spaces" are designated by biological sex. None of the enumerated actions mention litigation or enforcing the law.

On February 14, 2025, the EEOC took the extraordinary step of moving to dismiss its own lawsuit pursuant to Fed. R. Civ. P. 41(a)(2) on the attenuated grounds that "continued litigation of the claims in this action *may be* inconsistent with the Order and the OPM Guidance." ECF No. 12 at #24 (emphasis added). The EEOC gave no explanation for its speculation that the instant matter might be inconsistent with the Order and OPM Guidance, and it offered no other reasons for dismissal.

The Court noticed a hearing on the motion and directed the EEOC to ensure the Charging Party and Aggrieved Individuals received actual notice of the hearing. ECF No. 13.  Now, Charging Party Jasper Futch and one of the Aggrieved Parties, John Doe, oppose the EEOC's motion to dismiss. They simultaneously move to intervene. It is unknown whether the third employee whose rights were being vindicated by the EEOC (Aggrieved Individual No. 2) has counsel.

## LEGAL STANDARD

Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper. Fed. R. Civ. P. 41(a)(2). Courts typically consider whether the dismissal will prejudice the defendant, and a court may "impose such terms and conditions as it believes necessary to protect other parties from prejudice." *Ratkovich By & Through Ratkovich v. Smith Kline*, 951 F.2d 155, 158 (7th Cir. 1991).

The Seventh Circuit has delineated several factors that a district court may wish to consider in making its determination as to whether a defendant has suffered legal prejudice. These factors include "the defendant's effort and expense of preparation for trial, excessive delay and lack of diligence on the part of the plaintiff in prosecuting the action, insufficient explanation for the need to take a dismissal and the fact that a motion for summary judgment has been filed by the defendant." *Id.* (citing *Pace v. Southern Express Co.*, 409 F.2d 331, 334 (7th Cir.1969)).

It appears the Seventh Circuit has not enumerated the factors to consider when a charging party or others may be prejudiced by the EEOC's motion to dismiss. The

Court should, at minimum, borrow from the factors enumerated in *Ratkovich* and consider whether the moving party has offered "insufficient explanation for the need to take dismissal[.]" *Id.* The Court should ask, are charging parties and aggrieved individuals prejudiced, and is there good cause for dismissal?

## ARGUMENT

### I.  Dismissal Would Prejudice the Charging Party and Aggrieved Individuals

#### A.  Charging Party Jasper Futch and Aggrieved Individual No. 1 John Doe Seek to Intervene

Intervenors Futch and Doe oppose dismissal of this lawsuit. They seek to intervene and prosecute their Title VII claims.[1]  The Court should grant the motion to intervene and deny the EEOC's motion to dismiss on this ground alone. Additionally, assuming the Court grants the motion to intervene, then Federal Rule of Procedure 41(a)(2) is not applicable as it used to dismiss entire actions, not claims. *Turner v. Off. of Sheriff of Crawford Cnty.*, No. 08-CV-837-JPG, 2010 WL 455493 (S.D. Ill. Feb. 4, 2010).

#### B.  Dismissal of the EEOC Will Prejudice Aggrieved Individual No. 2 Unless She Obtains Counsel and Files a Motion to Intervene

The EEOC brought this matter, in part, to provide relief to Charging Party, Aggrieved Individual No. 1, and Aggrieved Individual No. 2. ECF No. 1. If the EEOC is dismissed, unless Aggrieved Individual No. 2 intervenes, her rights under Title VII of the Civil Rights of 1964 will be extinguished. Intervenors Futch and Doe cannot

---

[1] In deciding to bring this lawsuit, the EEOC barred Futch and Doe from bringing a case of their own. Title VII bars an aggrieved individual from ever bringing suit should the EEOC choose to sue on its own. In such cases, the only right Title VII reserves to an aggrieved individual is the right to intervene in the EEOC's action. 42 U.S.C. § 2000e–5(f)(1) (1998).

intervene on her behalf. It is unknown if Aggrieved Individual No. 2 has legal

representation. The Court should order the EEOC to remain in the case to protect

Aggrieved Individual No. 2's rights.

### C. EEOC's Presence in the Litigation Benefits the Charging Party and Aggrieved Individuals. Without the EEOC, They Are Prejudiced.

To the extent that the EEOC does not seek to dismiss the entire case and merely

wishes to withdraw, the Court should decline because intervenors and the Aggrieved

Individual No. 2 will be prejudiced. The EEOC has privileges not available to private

persons pursuing their rights individually.

First, if the EEOC is dismissed, the defendant may seek an automatic stay of this

litigation. Defendant Starboard with Cheese has filed for bankruptcy. *In re Starboard

with Cheese,* No. 23-bk-04796-TPG (M.D. Fla. Bankr.). But if the EEOC remains in the

case the automatic bankruptcy stay will not apply. *E.E.O.C. v. Wildwood Indus., Inc.*, No.

08-CV-1256, 2009 WL 2050992 (C.D. Ill. July 8, 2009) (collecting cases and holding that

the EEOC enforcement actions are exempt from automatic bankruptcy stay). Under 11

U.S.C. § 362(b)(4), actions brought by governmental agencies in exercise of their police

or regulatory power are exempt from bankruptcy stays. Every U.S. Court of Appeals to

consider the issue has held that an EEOC enforcement action falls with the 11 U.S.C. §

362(b)(4) exception to the automatic stay. Without the EEOC, Intervenors and

Aggrieved Individual No. 2 may wait years more for justice.

Second, as the plaintiff, the EEOC is not subject to the same statute of limitations

and administrative charging filing requirements that apply to private litigants. *See*

6

*Occidental Life Ins. Co. of California v. E.E.O.C.*, 432 U.S. 355, 97 S. Ct. 2447, 53 L. Ed. 2d

402 (1977) (Title VII imposes no limitation on EEOC's power to file suit in federal court

and state statutes of limitation do not apply). If the EEOC is dismissed, Intervenor Doe

and Aggrieved Individual No. 2 may face arguments from the defendants that they

have not administratively exhausted their claims pursuant to 42 U.S.C.A. § 2000e-5 or

that they failed to satisfy the statute of limitations. While Doe and Aggrieved Individual

No. 2 have strong arguments that they vicariously exhausted their administrative

remedies through Charging Party Futch's charge, there is no guarantee that the Court

will rule in their favor. At minimum, without the EEOC's participation, Intervenor Doe

and Aggrieved Individual No. 2 risk motion practice and delay that they would not face

in the EEOC remained in the case.

Third, the EEOC may bring suit in its own name and pursue relief for those

harmed by discrimination. 42 U.S.C.A. § 2000e-5(f)(1). Without the EEOC, individuals

who wish to protect their rights must become litigants. Litigation is burdensome and

expensive: it essentially requires obtaining counsel, and it puts the intervenors at risk of

paying defendants' costs under Fed. R. Civ. P. 54(d).  They would not face such risks

with the EEOC in the litigation. And, litigants must disclose their names to the court

and the public. Fed. R. Civ. P. 10(a). But such publicity may deter employees from

vindicating their rights. Employees may fear retaliation by future employers. *See*

Deborah L. Brake, Retaliation, 90 MINN. L. REV. 18, 31-32 (2005) (noting that the

widespread failure to confront discrimination publicly is "largely shaped by an acute

perception of the social costs of doing so"). Additionally, some individuals, like

7

Intervenor Doe, may not feel safe disclosing their identity publicly. Unless the Court grants Doe's motion to proceed pseudonymously in the instant matter, without the EEOC, he will not be able to pursue his rights. Because they must proceed in their own name or convince the Court to allow them to proceed pseudonymously, EEOC's dismissal from the case prejudices John Doe and may prejudice Aggrieved Individual No. 2.

Fourth, to the extent that defendant may argue that this matter must proceed in arbitration pursuant to an arbitration agreement, Intervenors would be prejudiced by the EEOC's absence. The EEOC is not bound by arbitration agreements executed by a charging party and may seek relief in federal court. *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 122 S. Ct. 754, 151 L. Ed. 2d 755 (2002) (a charging party's arbitration agreement with its employer does not bar the EEOC from pursuing victim-specific relief in federal court).

## II. The EEOC's Speculative and Overly Broad Reading of the OPM Guidance Is Not Good Cause for Dismissal

The EEOC proffers only one reason for dismissal: its speculation that this case "may be inconsistent" with the OPM Guidance and Order. The EEOC's speculation is based on an overly broad reading of the OPM Guidance and Order. Both documents are silent on litigation. And, even if the OPM Guidance and Order could be read to control agencies' litigation positions, this lawsuit does not "promote or reflect" or "inculcate gender ideology" as defined by the Order. Moreover, as described below, the OPM Guidance and Order facially discriminate on the basis of sex.  The unlawful, political

whims of new Agency leadership cannot satisfy EEOC's burden to demonstrate good

cause. They are "insufficient explanation for the need to take a dismissal." *Ratkovich*, 951

F.2d at 158.

### A. The OPM Guidance Does Not Direct Agencies to Change Course in Litigation

The EEOC claims that litigating this case "may be inconsistent" the OPM

Guidance and Order. It is wrong. Nothing in the OPM Guidance suggests that the

EEOC should change its course in litigation. Instead, the OPM Guidance's focus is on

the federal government's programs that "inculcate gender ideology." Agencies are

tasked with changing internal position descriptions, ending the use of pronouns in

agency email, canceling training and taking other personnel or internal workplace

actions. None of these directives impacts litigation. The OPM Guidance also requires

elimination of grants, removal of outward facing media, and withdrawal of regulations

and other documents that "inculcate or promote gender ideology." But none of these

directives mention litigation either.

Even if the OPM Guidance or Order did direct agencies to change their litigation

strategies, the EEOC fails to explain how litigating this case promotes so-called "gender

ideology" as defined by the Order. Nothing about this lawsuit "replace[s]" sex "with an

ever-shifting concept of self-assessed gender identity." Order at Section 2(f). Nor does

this litigation promote "the idea that there is a vast spectrum of genders" or "diminish[]

sex as an identifiable or useful category." *Id.*

On the contrary, in this litigation the EEOC challenges sexual harassment, constructive discharge, and retaliation as prohibited by Title VII of the Civil Rights Act of 1964 as interpreted by the Supreme Court in *Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 140 S. Ct. 1731, 207 L. Ed. 2d 218 (2020). Rather than asserting that there is an "ever-shifting concept of gender identity" or "vast spectrum of genders," the EEOC complaint states that Charging Party and Aggrieved Individuals are transgender and states that their gender identity is "different than the sex" they were designated at birth. ECF No. 1 at #3. The complaint goes on to identify the employer's practices that violate the law, including: (1) sexual harassment involving unwanted sexual touching and graphic sexual comments; (2) constructive discharge; (3) disparate terms and conditions of employment, including access to the bathroom; and (4) retaliation for reporting sexual harassment and disparate treatment. The EEOC fails to describe how pursuing these claims would promote "gender ideology" as defined by the Order.

**B. The Order on Which the OPM Guidance is Based is Contrary to Law and Has Been Enjoined**

Assuming arguendo that the Order and OPM Guidance can be read to require the EEOC to withdraw from this case, the Order is contrary to law and fact and cannot be the good cause required for dismissing this case. The Order denies the existence of transgender people and in doing so facially discriminates against them. *PFLAG v. Trump*, No. 25-337-BAH, ECF 115 at 66 (D. Md. Mar. 4, 2025) (granting a preliminary injunction blocking enforcement of the Order as to healthcare for transgender children and noting that the court "cannot fathom discrimination more direct than the plain

pronouncement of a policy resting on the premise that the group to which the policy is directed does not exist.").[2] By facially discriminating against transgender individuals, the Order and the OPM Guidance discriminate on the basis of sex. *Bostock*, 590 U.S. at 660.

---

[2] No less than ten lawsuits have been filed challenging various sections of the Order that discriminate against transgender individuals, and some courts have enjoined or temporarily restrained portions of the Order. *National Urban League v. Trump*, No. 25-cv-00471(D.D.C. Feb. 19, 2025) (challenging the Order as unconstitutional and violative of the Equal Protection Clause and the First Amendment); *Orr v. Trump*, No. 25-cv-10313 (D. Mass. Feb. 7, 2025) (challenging the Order as violative of the Equal Protection Clause, First Amendment and Administrative Procedures Act as it applies to passports); *Doe v. McHenry*, No. 1:25-CV-286-RCL, 2025 WL 388218 (D.D.C. Feb. 4, 2025) (temporarily restraining sections of the Order regarding housing prisoners); *Doe v. Bondi*, 25-cv-286-RCL (D.D.C. Feb. 24, 2025) (enjoining the government from implementing the housing of prisoners sections of the Order as to plaintiffs); *Moe v. Trump*, No. 25-10195-GAO (D. Mass. Jan. 26, 2025) (challenging the Order's application to transgender prisoners); *Kingdom v. Trump*, No. 25-cv-00691-RCL (Mar. 10, 2025) (challenging the Order's denial of healthcare to transgender prisoners); *Washington v. Trump*, No. 2:25-CV-00244-LK, 2025 WL 659057 (W.D. Wash. Feb. 28, 2025) (enjoining the executive branch from enforcing Sections 3(e) and 3(g) of the Order to withhold federal funds to health providers providing gender affirming care); *Drs. for Am. v. Off. of Pers. Mgmt.*, No. CV 25-322 (JDB), 2025 WL 452707 (D.D.C. Feb. 11, 2025) (temporarily restraining the executive branch from implementing the Order to the extent the Order was responsible for the removal of numerous webpages and datasets from the CDC and FDA websites and ordering the information to be restored); *Ireland v. Hesgeth*, No. 25-cv-01918 (D.N.J. Mar. 17, 2025) (challenging the Order, Executive Order 14,183, and memoranda banning transgender people from military service); *Rhode Island Latino Arts v. Trump*, No. 25-cv-0079 (D.R.I. Mar. 6, 2025) (challenging the Order and changes to the National Endowment of the Arts grantee requirements); *San Francisco AIDS Foundation v. Trump*, No. 25-cv-01824 (N.D. Cal. Feb. 20, 2025) (challenging the Order and Executive Orders 14173 and 14151 as unconstitutional); *PFLAG v. Trump*, No. 25-337-BAH, ECF 115 at 66 (D. Md. Mar. 4, 2025) (granting a preliminary injunction blocking enforcement of the Order as to healthcare for transgender children). *See also Shilling v. United States*, No. 25-CV-241-BHS, 2025 WL 926866 (W.D. Wash. Mar. 27, 2025) (enjoining the Administration from implementing Executive Order No. 14183; holding that the military ban discriminates against transgender individuals because it makes impermissible classifications based on sex and noting that the impermissible definitions of sex come from Executive Order 14168).

### III. There Are No Terms that Would Make Dismissal Proper

A district court in granting voluntary dismissal may "impose such terms and conditions as it believes necessary to protect other parties from prejudice." *Ratkovich*, 951 F.2d at 158. But there are no terms that would make dismissal proper here. The EEOC is tasked with enforcing Title VII not retreating from enforcement based on the unlawful whims of new Agency leadership. But that's exactly what's afoot. Weeks after the EEOC's leadership change, the Agency moved to dismiss this case and six others that challenge transgender discrimination in the workplace.[3] Dismissing the Agency would be contrary to the public interest.

#### A. Dismissal of the EEOC is Contrary to Supreme Court Jurisprudence, Title VII, and the EEOC's Responsibilities

The EEOC brought this case "because there was strong evidence of discrimination."[4] Nothing has changed since the EEOC filed. Title VII, the law the EEOC enforces, prohibits employment discrimination on the basis of sex. Discrimination against employees who are transgender is impermissible sex discrimination under Title VII. *Bostock*, 590 U.S. at 660. The Supreme Court has held

---

[3] *EEOC v. Brik Enterprises, Inc.*, No. 2:24-cv-12817-BRM-CI, ECF No. 26 (E.D. Mich. Feb 24, 2025); *EEOC v. Reggio's Pizza, Inc.*, No. 1:24-cv-08910, ECF No. 20, (N.D. Ill. Feb. 14, 2025); *EEOC v. Lush Handmade Cosmetics, LLC*, No. 5:24-cv-06859, ECF No. 25 (N.D. Cal. Feb. 14, 2025); *EEOC v. Boxwood Hotels, LLC*, et al, No. 1:24-cv-00902-LVJ, ECF No. 32 (W.D.N.Y. Feb. 14, 2025); *EEOC v. Harmony Hospitality, LLC*, No. 1:24-cv-00357-CWB, ECF No. 23 (M.D. Ala. Feb. 13, 2025); *EEOC v. Sis-Bro, Inc.*, No. 3:24-cv-968, ECF No. 63 (S.D. Ill. Feb. 14, 2025).

[4] Jessica Silver-Greenberg, *Trans Workers Describe a 'Betrayal' by an Agency Meant to Protect Them,* New York Times (Mar. 5, 2025), https://www.nytimes.com/2025/03/05/business/eeoc-trans-workers-discrimination.html (quoting former EEOC General Counsel Karla Gilbride).

that "[a]n individual's homosexuality or transgender status is not relevant to employment decisions. That's because it is impossible to discriminate against a person for being homosexual or transgender without discriminating against that individual based on sex." *Id*. The Order and the OPM Guidance cannot supplant the Congressional mandate that the EEOC must enforce Title VII, including its anti-sex discrimination provisions, or the Supreme Court's decision.

### B. The unprecedented relief sought here would create perverse incentives and harm the public interest.

To the extent that the EEOC's concern that litigating this case may conflict with the Order and OPM Guidance is driven by the EEOC new leadership simply disfavoring the litigation, this is an improper reason for dismissal. The EEOC cites no case in which a court permitted it to dismiss a case because new agency leadership disagreed with the litigation choices made by their predecessors. This Court should be wary of setting that precedent.

If granted, the relief requested by the parties would incentivize new agency leadership looking to separate themselves ideologically from the political leadership of the prior administration to file such motions as a way of staking out their distinct political identities, particularly in high-profile or controversial cases, in the early days of each new presidential administration. Such tides of politically motivated Rule 41 motions every

four or eight years could swamp courts' already crowded dockets, taking resources away from serving the mission of each agency and meeting the needs of the American people.[5]

"When the EEOC acts, albeit at the behest of and for the benefit of specific individuals, it acts also to vindicate the public interest in preventing employment discrimination." *Gen. Tel. Co. of the Nw. v. Equal Emp. Opportunity Comm'n*, 446 U.S. 318, 326, 100 S. Ct. 1698, 1704, 64 L. Ed. 2d 319 (1980). According to the EEOC's 2022-2026 Strategic Plan, "Congress entrusted the EEOC with the responsibility of enforcing the nation's employment anti-discrimination laws. These laws reflect Congress' vision of equal opportunity in our nation's workplaces. To honor the trust that has been given us, we must have an unwavering commitment to carrying out that vision."[6] The EEOC acted in the public interest when in brought this case. If the EEOC is permitted to dismiss this case, it will break the public trust.[7] The EEOC best serves the American people by remaining in the case and enforcing the law.

## CONCLUSION

The court should deny the EEOC's motion to dismiss.

---

[5] Permitting dismissal would also encourage waste. EEOC staff have investigated and developed this matter for over three years. They have invested government time and resources in preparing and prosecuting the litigation.

[6] EEOC Strategic Plan 2022-2026. https://www.eeoc.gov/eeoc-strategic-plan-2022-2026. The Plan was approved by the EEOC on August 16, 2023 by a 3-2 vote. Modification requires a vote of the EEOC Commissioners.

[7] Former EEOC General Counsel Karla Gilbride stated that "walking away from [transgender] cases and these individuals who put their trust in us is a betrayal." Jessica Silver-Greenberg, *Trans Workers Describe a 'Betrayal' by an Agency Meant to Protect Them,* New York Times (Mar. 5, 2025), https://www.nytimes.com/2025/03/05/business/eeoc-trans-workers-discrimination.html.

DATED: April 9, 2025

Respectfully submitted,

/s/ *Ellen Eardley*
Ellen Eardley
MEHRI & SKALET, PLLC
2000 K Street, NW, Suite 325
Washington, DC 20006
Telephone: (202) 822-5100
Fax: (202) 822-4997
Email: eeardley@findjustice.com

Maria de las Nieves Bolaños
(*pro hac vice*)
HAWKS QUINDEL, S.C.
111 E. Wacker Drive, Suite 2300
Chicago, IL 60601
Telephone: (312) 262-7517
Fax: (414) 207-6079
Email: mnbolanos@hq-law.com