IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JASPER FUTCH and JOHN DOE,<br><br>Plaintiffs,<br><br>v.<br><br>STARBOARD WITH CHEESE, LLC and STARBOARD GROUP EMPLOYMENT SERVICES, INC.,<br><br>Defendants. | Case No. 3:24-cv-2260-NJR |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

This matter is before the Court on the Motion to Proceed Using a Pseudonym filed by Plaintiff John Doe (Doc. 24) and the Motion to Stay Proceedings filed by Defendant Starboard Group Employment Services, Inc. (SGES) (Docs. 38, 39). For the reasons set forth below, the Court grants both motions.

### BACKGROUND

This case concerns allegations of employment discrimination on the basis of sex and gender identity. According to the Amended Complaint (Doc. 30), Plaintiffs John Doe and Jasper Futch were each employed for several months in 2021 at a Wendy's[1] in Carbondale, Illinois. (Doc. 30, at 3). Defendants SGES and Southwest With Cheese, LLC (SWC)[2] operate Wendy's locations in accordance with an "Employment Services

---

[1] For those who may not know, Wendy's is a fast-food restaurant. *See, e.g.*, Kate Taylor, *Here's why Wendy's Burgers Are Square*, BUS. INSIDER (Sept. 14, 2016, at 10:01 CT), https://www.businessinsider.com/why-are-wendys-burgers-square-2016-9.

[2] The docket lists a third defendant: Starboard with Cheese Employment Services, Inc. This entity is not

Agreement." (Doc. 39, at 1; Doc. 39-1). Pursuant to that agreement, SWC owns and operates Wendy's restaurants and is responsible for directing and controlling all restaurant operations. (Doc. 39-1, at 1; Doc. 39, at 2). SGES, on the other hand, is the sole employer for all staff at SWC's restaurants at or below the store-manager level; its responsibilities include placement of employees and administering the payroll. (Doc. 39, at 2). The agreement between SWC and SGES further provides that SWC is to "indemnify and hold [SGES] harmless from any liability, costs or expense, including but not limited to any penalty or interest that may result from the employment of any employees performing services for [SWC]." *Id.* (alterations in original).

Futch and Doe claim in their amended complaint[3] that SGES and SWC violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2; Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981a; and the Illinois Human Rights Act (IHRA), 775 ILL. COMP. STAT. 5/2-101 to -110. (Doc. 30). They allege that SWC and SGES unlawfully (1) subjected them to a hostile work environment; (2) subjected them to disparate terms and conditions of employment; (3) constructively discharged them by making the workplace intolerable;

---

named as a defendant in the original complaint (Doc. 1) or the amended complaint (*see* Doc. 30) and was not served with a summons (Docs. 31–34). Its presence on the docket, therefore, appears erroneous. The Clerk of Court is **DIRECTED** to terminate Starboard with Cheese Employment Services, Inc. as a defendant in this action.

[3] This case was originally brought by the Equal Employment Opportunity Commission (EEOC). (Doc. 1). However, the EEOC later moved to dismiss their complaint with prejudice to comply with guidance it had received from the Office of Personnel Management. (Doc. 12; *see also* Doc. 27, at 1–2, 1 n.1). Consequently, Plaintiffs Futch and Doe—the Charging Party and Aggrieved Individual No. 1 in the original action, respectively—requested leave to intervene as plaintiffs in this suit. (Doc. 22). This Court permitted the intervention and dismissed the EEOC's motion as moot. (Doc. 27). The EEOC is no longer party to this action.

(4) retaliated against them; and (5) failed to make and preserve relevant records of the alleged unlawful employment practices. (Doc. 30, at 4–8).

After intervening as a plaintiff, Doe moved for leave to proceed using a pseudonym. (Doc. 24). Though Doe has provided his name to the Court in a sealed filing (Doc. 29) and is willing to share his name with Defendants subject to a protective order (Doc. 24), he fears retaliation and threats from members of the public toward him and his loved ones if his name is made part of the public record. Defendants have not filed a response to Doe's motion. The Court has thus far withheld ruling on this motion. (Doc. 27, at 2 n.2).

After being served with the amended complaint, SGES moved to stay these proceedings. (Docs. 38, 39). It points out that its codefendant, SWC, is engaged in bankruptcy proceedings. (Doc. 39, at 4). SWC is therefore entitled to an automatic stay of judicial proceedings against it under 11 U.S.C. § 362(a). (Doc. 39, at 4). SGES argues either (1) that the § 362(a) stay should be extended to this entire action, or (2) that this Court should stay these proceedings as an exercise of its inherent authority. *Id.* at 4–11. Futch and Doe filed a response in opposition (Doc. 44), to which SGES filed a timely reply (Doc. 45).

## MOTION TO PROCEED USING A PSEUDONYM

In this Circuit, proceeding anonymously is disfavored as "run[ning] contrary to the rights of the public to have open judicial proceedings and to know who is using court facilities and procedures funded by public taxes." *Doe v. Village of Deerfield*, 819 F.3d 372, 376–77 (7th Cir. 2016). "The open nature of proceedings allows for public access and

monitoring," but "the presumption that a party's name is public information can be rebutted by showing that the harm of identification outweighs the harm of anonymity." *Doe v. United States*, No. 16-cv-0640, 2016 WL 3476313, at *1 (S.D. Ill. June 27, 2016) (citing *Doe v. City of Chicago*, 360 F.3d 667, 669 (7th Cir. 2004)). "[T]he judge has an independent duty to determine whether exceptional circumstances justify a departure from the normal method of proceeding in federal courts." *Doe v. Blue Cross & Blue Shield United of Wis.*, 112 F.3d 869, 872 (7th Cir. 1997).

Doe, a transgender individual, provides compelling reasons to believe that he may suffer harm if his name becomes public information. In a sealed affidavit, he avers that he "suffered harassment, discrimination, [and] intimidation as a result of [his] transgender status," as well as retaliation "when [he] tried to assert [his] rights" during the events precipitating this litigation. (Doc. 29, at 1). He points out that local media coverage of this litigation has garnered vitriolic comments, and that the EEOC's reversal on lawsuits such as this one has received national media attention. (Doc. 24 at 5, 9). As a result of this media attention, Doe credibly believes that the publication of his name in association with this litigation could lead to retaliation and renewed harassment against not only him, but also his partner (who he avers has already been subject to harassment, both online and in person because both she and Doe are transgender) and her minor child. (Doc. 29, at 2; *see* Doc. 24, at 9–10).

This Court credits Doe's claims and notes that other courts, both within this Circuit and without, have considered similar risks to create "exceptional circumstances" warranting permission to proceed anonymously. *Doe v. United States*, 2016 WL 3476313,

at *1 (holding that the plaintiff parents of a transgender child were entitled to proceed anonymously as revealing their names would "expose [them] to the risk of retaliation by members of the public"); *see, e.g., id.* (collecting out-of-circuit cases where it was found or noted "that transgendered plaintiffs may proceed anonymously because of the social stigma associated with non-conforming gender identities"); *cf. Doe v. City of Chicago*, 360 F.3d at 669 (noting "closeted homosexual[ity] as an example of a case where anonymity might be warranted). Moreover, this harm is not counterbalanced by any risk of prejudice to Defendants, as Doe is willing to provide them his name (Doc. 24, at 3).

The Court finds that the harm to the public from concealing Doe's name is exceeded by the risk he would face if it were revealed. These proceedings can still "be monitored by the public," who will have access to all the "facts of the case" save for one of the plaintiffs' names. *Doe v. City of Chicago*, 360 F.3d at 669. As such, Doe's motion to proceed using a pseudonym is granted.

## MOTION TO STAY PROCEEDINGS

As a preliminary note, much of the briefing on the motion to stay these proceedings concerns whether 11 U.S.C. § 362(a), which automatically stays litigation against SWC during the pendency of its bankruptcy proceedings, should be extended to this action as whole. (*See* Doc. 39, at 4–9; Doc. 44, at 1–4). SGES's argument relies largely on *A.H. Robins Co. Inc. v. Piccinin*, a Fourth Circuit opinion explaining that proceedings against a non-bankrupt codefendant can sometimes be stayed by operation of § 362(a) in certain "unusual circumstances." 788 F.2d 994, 999–1000 (4th Cir. 1986). However, the Seventh Circuit has held that "[t]he clear language" and "legislative history" of § 362(a)

indicate that it "extends the automatic stay provision only to the debtor filing bankruptcy proceedings and not to non-bankrupt co-defendants." *Pitts v. Unarco Indus., Inc.*, 698 F.2d 313, 314–15 (7th Cir. 1983) (per curiam).[4] Therefore, any stay of these proceedings must be analyzed as an exercise of this Court's inherent authority rather than as an operation of § 362(a).

A district court has the inherent power to control its own docket, "including the discretion to stay proceedings." *Roberson v. Maestro Consulting Servs. LLC*, No. 20-cv-895, 2021 WL 1017127, at *1 (S.D. Ill. Mar. 17, 2021); *see also Munson v. Butler*, 776 F. App'x 339, 342 (7th Cir. 2019) ("[A] district court has inherent power to exercise its discretion to stay proceedings to avoid unnecessary litigation of the same issues." (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936))). In determining whether to stay a proceeding, the Court considers "(1) whether a stay will simplify the issues in question and streamline the trial; (2) whether a stay will reduce the burden of litigation on the parties and on the court; and (3) whether a stay will unduly prejudice or tactically disadvantage the nonmoving party."

---

[4] In its motion (Doc. 39, at 8), SGES identifies a Seventh Circuit decision which stated that "[t]here may . . . be an exception" to the rule in *Pitts* "where the debtor is an indispensable party to the litigation," *In re James Wilson Assocs.*, 965 F.2d 160, 170 (7th Cir. 1992) (discussing, in a brief aside, a "skeletal argument" that appellant had not preserved and which the court declined to consider). The Court has also located two cases where the Seventh Circuit has cited *A.H. Robins* for the proposition that, in some circumstances, the automatic stay might extend to a non-bankrupt codefendant. *Fox Valley Constr. Workers Fringe Benefit Funds v. Pride of the Fox Masonry & Expert Restorations*, 140 F.3d 661, 666 (7th Cir. 1998) (explaining but finding inapplicable the rule in *A.H. Robins*); *In re Fernstrom Storage & Van Co.*, 938 F.2d 731, 736 (7th Cir. 1991) (same). However, none of these three cases explicitly overruled *Pitts*. Consequently, *Pitts* is still good law, and this Court is bound to follow it. *Brooks v. Walls*, 279 F.3d 518, 522–23 (7th Cir. 2002) ("One panel of this court cannot overrule another implicitly. Overruling requires recognition of the decision to be undone and circulation to the full court under Circuit Rule 40(e)."); *see also United States v. Dalhouse*, 534 F.3d 803, 806–07 (7th Cir. 2008) (first citing 7th Cir. R. 40(e); and then citing *Brooks*, 279 F.3d at 522–23) (earlier decision of Seventh Circuit was not overruled by reference in subsequent decision to contrary rule from another circuit).

*Roberson*, 2021 WL 1017127, at *1 (S.D. Ill. Mar. 17, 2021) (quoting *Berkeley*IEOR v. Teradata Operations, Inc.*, No. 17 C 7472, 2019 WL 1077124, at *5 (N.D. Ill. Mar. 7, 2019)).

In its motion, SGES offers a laundry list of reasons a stay would be justified. It points out that SWC is contractually obliged to indemnify SGES; thus, any judgment against SGES and any costs SGES incurs in mounting its legal defense will operate directly on SWC's bankruptcy estate. (Doc. 39, at 2, 8–9). It argues that, because Futch and Doe's allegations against SGES are "derivative of and inseparable from the conduct of" SWC, proceeding against SGES alone could create duplicative litigation. *Id.* at 2–3, 9–11. Moreover, SWC is "an indispensable source of discovery concerning the alleged conduct at issue." *Id.* at 11. If the automatic stay as to SWC were to shield it from complying with discovery, SGES would be forced to defend itself "without access to critical documents, witnesses, or testimony under SWC's control." *Id.* Finally, SGES argues that, because it and SWC are in privity and because "SGES's liability, if any, would derive entirely from SWC's conduct," a judgment or factual finding against SGES could have preclusive effect against SWC. *Id.* at 9.

Futch and Doe, in turn, offer several arguments in response. They dispute that a judgment against SGES would necessarily operate on SWC's bankruptcy estate, as SGES would be responsible for paying the judgment unless and until it attempts to enforce the indemnification provision. (Doc. 44, at 3). They contest SGES's factual claim that SWC had full control over management and operations at Wendy's restaurants while SGES

was only in charge of payroll.[5] *Id.* at 2–3. They state that SGES did not adequately explain how proceeding without a stay threatens judicial economy or risks duplicative litigation. *See id.* 5–6. Even if there were such a risk, they claim "the Parties can always bring any particular issues . . . to the Court's attention if they arise." *Id.* at 6. They argue that the automatic stay as to SWC does not shield it from discovery obligations, so SGES would not be prejudiced by proceeding alone.[6] *Id.* at 3–6. Finally, Futch and Doe downplay the risk of preclusion by pointing out that SGES did not identify any specific factual disputes which might have a preclusive effect against SWC. *Id.* at 3.

Futch and Doe further argue that a stay would unduly prejudice them by subjecting them to the "very real risk that witnesses' memories and other relevant information will be lost . . . due to the passage of time." *Id.* at 5. As Futch and Doe point out, there is no way to know when SWC's bankruptcy proceedings will be resolved, rendering the requested stay indefinite. *Id.* A prolonged stay of these proceedings risks the creation of evidentiary difficulties—especially given the allegations of an unlawful failure to preserve relevant records. (Doc. 30, at 8).

---

[5] Futch and Doe also argue that SGES is liable as a "joint employer" with SWC, irrespective of SWC's liability. (Doc. 44). However, as SGES points out in its reply (Doc. 45, at 3–4), the question of whether two or more entities are "joint employers" of a given employee (a fact-intensive question, *see, e.g.*, *EEOC v. Village at Hamilton Pointe LLC*, 102 F.4th 387, 435 (7th Cir. 2024) (giving five-factor test)) is separate from the question of whether one employer (here, SGES) can be held liable for the acts of its alleged joint employer (here, SWC). *See Whitaker v. Milwaukee County*, 772 F.3d 802, 810–12 (7th Cir. 2014) (establishing that an employer is liable for the discriminatory acts of its joint employer where it either participated or knew or should have known and failed to take prompt corrective measures within its control).

[6] As far as this Court can determine, there exists no binding authority on whether § 362(a) shields a bankrupt defendant from complying with discovery requests related to claims against non-bankrupt codefendants. However, based on the decisions of other district courts, Futch and Doe appear to be correct. *E.g.*, *In re Richard B. Vance & Co.*, 289 B.R. 692, 697 (Bankr. C.D. Ill. 2003) (citations omitted) (describing as "the majority rule" and "generally accepted" that "discovery pertaining to claims against the bankrupt's codefendants is not stayed, even if the discovery requires a response from the debtor, and even if the information discovered could later be used against the debtor").

While the Court is sympathetic to Futch and Doe's concerns, judicial economy favors a stay. This is not a case where the claims against each co-defendant are discrete and easily separable; instead, Futch and Doe's complaint alleges that both "the Defendants" committed each violation and does not attempt to distinguish between them. (Doc. 30, at ¶¶ 15–18, 21). If no stay is granted, it is conceivable that Futch and Doe's claims could proceed through discovery and trial two separate times. Rather than potentially trying the same factual and legal issues twice, "a stay would conserve judicial resources by avoiding duplicative litigation." *Paul v. Aviva Life & Annuity Co.*, No.09-1038, 2009 WL 2244766, at *1 (N.D. Ill. July 27, 2009).

In addition to reducing the burden on the parties and the Court, a stay would simplify the issues in question. Futch and Doe allege they experienced employment discrimination while working at the Wendy's in Carbondale, Illinois. (Doc. 30). Management of that Wendy's was split between SGES and SWC. (*See* Doc. 39, at 3–4; Doc. 39-1). There already exists a dispute over how much control, if any, each defendant had over the alleged unlawful conduct giving rise to this suit. (*Compare* Doc. 39, at 3 ("SGES had no involvement in directing, supervising, or managing [Futch and Doe's] work or the alleged conduct giving rise to their claims."), *with* Doc. 44, at 2 ("Contrary to SGES's motion, it did not simply provide payroll services to SWC. SGES jointly operated the Wendy's, was involved in implementing bathroom restrictions, ignored Plaintiffs' complaints about discrimination, retaliated against Plaintiffs, and failed to maintain records required by Title VII, among other things.")). Without a stay, the fact-intensive issue of the division of management (and thus, potentially, liability) between SGES and

SWC would be litigated *without* SWC. By staying these proceedings until SWC's bankruptcy proceedings are resolved, the Court ensures that these issues are litigated with the full participation of all interested parties.[7]

Finally, the Court notes that SWC's indemnification obligation further militates in favor of a stay. As SGES points out, SWC is bound to indemnify it not only for any potential adverse judgment but also for the costs SGES incurs in defending itself. (Doc. 39, at 8–9). Though, as discussed above, the automatic stay under § 362(a) only applies to SWC, permitting litigation to proceed against SGES—on SWC's dime—would "defeat the purpose of the automatic stay."[8] *Trimec, Inc. v. Zale Corp.*, 150 B.R. 685, 687 (N.D. Ill. 1993). Though not bound to do so under § 362(a), this Court finds that a stay of these proceedings is warranted.

---

[7] This consideration has even greater force when viewed in light of the potential consequences of proceeding without SWC. Imagine, for instance, that Futch and Doe proceed to trial against SGES while their claims against SWC remain stayed. Further suppose that a jury determines that the alleged conduct occurred and was unlawful, but that SGES could not be held liable because it did not have control over the management of the Wendy's and thus was not an "employer" within the meaning of the relevant statutes. Later, SWC's bankruptcy proceeding is resolved, and Futch and Doe proceed against it. Could Futch and Doe then use SWC's indemnification obligation to establish that it is in privity with SGES and therefore precluded from denying that the conduct took place or was unlawful? Such a result would seem unfair to SWC; yet, if SWC could relitigate whether the alleged conduct occurred or was unlawful, Futch and Doe could potentially be prevented from recovery despite having proved to a jury that they suffered workplace discrimination. By staying these proceedings, these potential difficulties are avoided entirely.

[8] Futch and Doe argue that, if they prevail, they could "collect on a judgment directly from SGES without disturbing any assets that are part of SWC's bankruptcy estate." (Doc. 44, at 3). Therefore, "a judgment against SGES would not amount to a judgment against SWC until SGES makes an effort to enforce its indemnification agreement." *Id.* This argument misses the point—regardless of which party seeks to collect from SWC's bankruptcy estate, *SWC's bankruptcy estate would still be collected from*. The point of the automatic stay under § 362(a) isn't to frustrate a debtor's plaintiffs, specifically—it is to protect the debtor from financial pressure. *See, e.g.*, *Royal Truck & Trailer, Inc. v. Armadora Maritima Salvadorena, S.A.*, 10 B.R. 488, 490 (N.D. Ill. 1981) (discussing Congress's purpose in enacting § 362(a)). That the enforcement mechanism would come through SWC's contract with SGES rather than Futch and Doe's direct attempts to collect is of no moment.

## Conclusion

For these reasons, Plaintiff John Doe's Motion to Proceed Using a Pseudonym (Doc. 24) is **GRANTED**.

Defendant Starboard Group Employment Services, Inc.'s Motion to Stay Proceedings (Doc. 38) is **GRANTED**. All proceedings and deadlines in this case are **STAYED** until the resolution of Defendant Starboard With Cheese, LLC's bankruptcy proceedings. Defendant Starboard Group Employment Services, Inc. is **DIRECTED** to notify the Court when Defendant Starboard With Cheese, LLC's bankruptcy proceedings have been terminated.

Further, the Parties are **DIRECTED**, within 30 days after this stay is lifted, to submit a joint proposed protective order to prevent Defendants from disclosing John Doe's name publicly.

Finally, the Clerk of Court is **DIRECTED** to terminate Starboard with Cheese Employment Services, Inc. as a defendant in this action in accordance with footnote 2.

**IT IS SO ORDERED.**

DATED:   December 1, 2025

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**